UNITED STATES of America, Appellee,

v.

Lohman Ray MAYS, Jr., Appellant.

No. 86–1726.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1986.

Decided July 2, 1987.

Philip M. Moomaw, Asst. Federal Public Defender, Springfield, Mo., for appellant.

Robin James Aiken, Asst. U.S. Atty., Springfield, Mo., for appellee.

Before McMILLIAN, ARNOLD, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Lohman Ray Mays, Jr., appeals his conviction for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). We affirm.

On May 28, 1985, the Eagle Rock, Missouri, branch of the Commerce Bank (Commerce Bank) was robbed by a man wearing a face mask made of mesh material and armed with a .45 caliber automatic pistol. Included in the $28,000 taken in the robbery were bait bills with serial numbers that had been previously recorded and dye pack devices containing red dye that were activated by a radio transmitter when carried through the front door of the bank. Employees of the bank heard the dye packs explode when the robber left the bank and saw the robber drive away from the bank in a dark green four-wheel drive vehicle.

Gary Dunnam, a bank manager at the Commerce Bank, identified Mays as the robber from a photographic lineup. At trial, Dunnam again identified Mays as the robber. He testified that he saw Mays come through the front door of the bank, turn his cap around so that the mesh material covered his face, and pull out a .45 automatic handgun. Dunnam testified that he had a clear view of Mays during the robbery and that based upon that perception he was able to identify Mays in the photo spread shown to him.

Patricia Ann Barrett testified as a government witness under a grant of immunity from prosecution for the Commerce Bank robbery. She was currently serving an eight-year federal sentence for the armed bank robbery of the Bellows Falls Trust Company in Londonderry, Vermont.

Ms. Barrett (no Bonnie Parker she) testified that she had participated in the Commerce Bank robbery with Mays. She stated that during the robbery she had remained in a stolen Bronco truck in front of the bank while Mays went into the bank. Following the robbery, she and Mays drove to a wooded area, where they abandoned the Bronco under a parachute and then left on foot with the money to where they had previously hidden their motorcycles, on which they then departed the state.

The government introduced dye-stained money found in a room in the Days Inn Motel in Northglenn, Colorado. Ms. Barrett testified that she and Mays had stayed with another friend in the Days Inn Motel and that they had forgotten some of the dye-stained money in a closet. She stated that the dye-stained money introduced at trial looked similar to the money stolen from the Commerce Bank.

Ms. Barrett also testified regarding the robbery that she and Mays had committed at the Bellows Falls Trust Company. She testified that before that robbery she and Mays stole a four-wheel drive Toyota to drive to the bank. They carried out the robbery armed with .45 caliber automatics. They then drove away in the stolen Toyota, abandoned it for a previously hidden vehicle, and left for an isolated wooded area, where they first broke into a travel trailer, remaining there for a short time, and then broke into a hunting lodge, where they remained for two days.

I.

The federally insured status of a bank is an essential element that must be proved to sustain a conviction under 18 U.S.C. § 2113(a) and (d). *United States v. Glidden*, 688 F.2d 58 (8th Cir.1982); *Scruggs v. United States*, 450 F.2d 359 (8th Cir.1971), *cert. denied*, 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972). Mays argues that the government failed to prove this element beyond a reasonable doubt. We do not agree.

Dunnam testified that the bank was insured with the Federal Deposit Insurance Corporation (FDIC). He also identified both the FDIC certificate and the check that was used to pay for the FDIC coverage for the period during which the robbery occurred. Such evidence alone has been held to be sufficient to support the finding that the institution was federally insured. *United States v. Phillips*, 606 F.2d 884 (9th Cir.1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980); *United States v. Greene*, 578 F.2d 648 (5th Cir.1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979).

■ We have held that a bank officer's testimony is sufficient to support a finding that a financial institution was federally insured. *United States v. Glidden*, 688 F.2d at 59. We think that the same evidentiary weight should be accorded the testimony of a bank manager. Accordingly, we conclude there was sufficient evidence to support a finding that the bank was federally insured on the date of the robbery.

## II.

Mays contends that the district court erred in admitting the dye-stained money into evidence. He argues that although the chain of custody is not relevant when a witness positively identifies an object as the actual object about which he testifies, *United States v. Derring*, 592 F.2d 1003 (8th Cir.1979), such was not the case in the present action. None of the essential witnesses in the chain of custody could testify that those bills were identical to the dye-stained bills they received.

The government's evidence showed that a motel employee discovered the money while cleaning a room. She took the money to the motel's restaurant manager, who counted the money and called the police. The police took the money to their property room and later sent it to the FBI for chemical analysis. It was determined by the FBI that the money was dyed with the same chemical substance used by the company which supplied the dye packs to the Commerce Bank. The FBI also determined that certain bills were a part of the Commerce Bank's bait list. These bills were introduced separately at trial. Ms. Barrett also testified that the bag and the money found at the motel appeared similar to the bag and the money left by them in the Days Inn Motel.

Also introduced by the government at trial was dye-stained currency recovered from the deposits of Quiznos Restaurant in Denver, Colorado. An employee of the restaurant testified that a man paid for a drink with a ten-dollar bill and asked her to change ten ten-dollar bills for five twenty-dollar bills. She stated that all the bills had red dye on them. The FBI determined that this money was dyed with the same chemical substance used by the company which supplied dye packs to the Commerce Bank. An FBI agent also testified that when he interviewed Mays following his arrest, Mays told him that he had left some of his money in the Days Inn Motel, and that he had also exchanged some money at Quiznos Restaurant.

■ A trial court's ruling concerning the admissibility of evidence can be reversed only upon a showing that a clear abuse of discretion has occurred. *United States v. Jones*, 687 F.2d 1265 (8th Cir. 1982). Factors to be considered in making a determination of the admissibility of a physical exhibit include the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of others tampering with it. *United States v. Brown*, 482 F.2d 1226, 1278 (8th Cir.1973). If upon consideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in any respect, it is admissible. *Id.* Furthermore, the integrity of evidence is presumed to be preserved unless there is a showing of bad faith, ill will, or proof that the evidence has been tampered with. *United States v. Gatewood*, 786 F.2d 821 (8th Cir.1986).

■ Given Ms. Barrett's testimony, Mays' admissions, and the other testimony on point, we conclude that Mays' challenge to the admission of the dye-stained bills must fail. The trial court did not abuse its discretion in admitting this evidence.

## III.

Mays argues that the district court abused its discretion under Fed.R.Evid. 404(b) in allowing Ms. Barrett to testify to the Bellows Falls Trust Company robbery and the subsequent breaking and entering of the travel trailer and the hunting lodge.

Fed.R.Evid. 404(b) states:

(b) * * * Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Mays contends that the government introduced the evidence of other crimes to show that Mays had a propensity towards criminal behavior, not to show proof of motive, identity or plan as required under Rule 404(b).

The standard for the admission of evidence of other crimes is well established. *United States v. Gustafson*, 728 F.2d 1078, 1082–83 (8th Cir.), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984).

> Our cases reveal certain requirements which must be met for other crimes evidence to be admissible under the rule: (1) a material issue on which other crimes evidence may be admissible has been raised * * * ; (2) the proffered evidence is relevant to that issue * * * ; (3) the evidence of the other crimes is clear and convincing * * * . In addition, to be admissible on such issues as intent, knowledge, or plan, the other crimes evidence must relate to wrongdoing "similar in kind and reasonably close in time to the charge at trial." * * * Finally, evidence otherwise admissible under Rule 404(b) may be excluded under Fed. R.Evid. 403, "if its probative value is substantially outweighed by the danger of unfair prejudice...." (citations omitted)

*Gustafson*, 728 F.2d at 1082–83.

■ The trial court is vested with broad discretion in deciding whether to admit other crimes evidence. Our role on appeal is to determine whether the district court abused its discretion in admitting such evidence. *United States v. Evans*, 697 F.2d 240, 248 (8th Cir.), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983); *United States v. Hall*, 565 F.2d 1052 (8th Cir.1977).

The material issues on which evidence of other criminal acts was admissible were the motive and identity of those who committed the Commerce Bank robbery. Ms. Barrett's testimony regarding the theft of the Toyota four-wheel drive truck and the Bellows Falls robbery was relevant to these issues and was therefore admissible. Ms. Barrett acknowledged on direct examination that the motive she and Mays had to commit the robberies was to secure enough funds to start a new life together. Moreover, both the Bellows Falls and the Commerce Bank robberies were similar enough to establish some identity between the robberies. Both banks were located in an isolated rural area; before both robberies a four-wheel drive vehicle was stolen and later abandoned; and in both robberies a .45 caliber automatic pistol was used.

The evidence of the Bellows Falls robbery and the theft of the Toyota was clear and convincing: Ms. Barrett had been convicted and sentenced for her participation in that robbery.

■ The task of balancing the probative value of this evidence against its prejudicial value is primarily for the trial court, and we normally defer to its judgment. *United States v. Bass*, 794 F.2d 1305 (8th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986). The trial court gave a limiting instruction that told the jury that this evidence could not be used to decide whether Mays carried out the Commerce Bank robbery. Such an instruction diminishes the danger of any unfair prejudice arising from the admission of other acts. *Gustafson*, *supra* at 1084. The admission of the challenged testimony, therefore, was not an abuse of the district court's discretion.

■ We do hold, however, that the admission of Ms. Barrett's testimony regarding the breaking and entering subsequent to the Bellows Falls Trust Company robbery was an abuse of discretion under Rule 404(b). This evidence was not relevant to any material issue in this case, and it did not aid in establishing identity or motive. Furthermore, the evidence did not fall within the very limited category of other crimes evidence that is so integral to the crime charged as to not be extrinsic and therefore not governed by Rule 404(b). *See United States v. Bass*, 794 F.2d at 1312; *United States v. DeLuna*, 763 F.2d 897,

913 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985).

In light of the other substantial evidence of Mays' guilt, however, we hold that the admission of the breaking and entering evidence was harmless error. *United States v. McCrady,* 774 F.2d 868 (8th Cir.1985).

## IV.

Mays asserts that Dunnam's in-court identification should not have been allowed because it was the product of an impermissibly suggestive photo spread.

A two-step inquiry is employed in reviewing a photographic display. The first step is to determine whether the photographic display was impermissibly suggestive. If found impermissibly suggestive, the second inquiry is whether under the totality of the circumstances the display created a substantial risk of misidentification at trial. *United States v. Briley,* 726 F.2d 1301, 1306 (8th Cir.1984). Reliability is the "linchpin" of the test. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

Mays argues that the photo spread was unnecessarily suggestive because only two of the photos portrayed persons with facial hair. In *United States v. Wilson,* 787 F.2d 375 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986), this court held that a photo spread was not unnecessarily suggestive where the suspect was the only Hispanic included in the display. The court stated that in the absence of differences in appearance tending to isolate the accused photograph, the identification procedure is not unnecessarily suggestive. *Id.* at 385. Because all of the persons in the photo spread had general physical characteristics compatible with Mays', the display was not unduly suggestive. Accordingly, the district court did not abuse its discretion in allowing Dunnam's in-court identification of Mays.

## V.

Mays also argues that the district court's failure to give a specific jury instruction on the reliability of eyewitness testimony denied him a fair trial. We have approved a specific jury instruction on the reliability of eyewitness testimony in cases in which the reliability of eyewitness identification of a defendant presents a serious question. *United States v. Cain,* 616 F.2d 1056 (8th Cir.1980). It is reversible error for a trial court to refuse this specific jury instruction where the government's case rests solely on questionable eyewitness identification. *United States v. Greene,* 591 F.2d 471 (8th Cir.1979). Although the district judge might well have given such an instruction, in view of the other corroborating evidence of Mays' guilt, specifically the testimony of Ms. Barrett, the district court did not commit prejudicial error in refusing to do so.

The judgment of conviction is affirmed.