UNITED STATES of America, Appellee,

v.

Kathleen FOLEY, Appellant.

No. 89–2745EM.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1990.

Decided June 28, 1990.

David R. Freeman, St. Louis, Mo., for appellant.

Kathianne K. Crane, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Kathleen Foley appeals her sentence under the Guidelines following her plea of guilty to one count of aiding and abetting the distribution of cocaine. Concluding that the district court's finding on the amount of cocaine involved to establish Foley's Base Offense Level was clearly erroneous, we reverse and remand for resentencing.

I. BACKGROUND

Foley was the "retailer" of cocaine between Edna Raymond and an undercover Missouri State Highway Patrolman. The undercover agent and Foley first made contact on October 27, 1988, when Foley agreed to arrange for the sale of an ounce of cocaine to the agent. This sale took

place the same day when Raymond met with Foley and the agent at a tavern. Raymond gave the agent a container of cocaine in exchange for $1,500. The amount of cocaine was later determined to be 33.1 grams.

The next sale was set up over the telephone by the agent on November 10, 1988. The following day, the agent met Foley and went with her to her home. Although the agent saw Raymond's vehicle in the vicinity, Raymond was not present at this sale. Apparently Raymond hid in one of the bedrooms of Foley's home in an effort to conceal the source of the cocaine from the agent. The amount of cocaine from this sale was later determined to be 26.02 grams, and the purchase price was again $1,500.

The final sale using Foley as an operative between Raymond and the agent was on November 19, 1988. Again, after arranging for the sale by phone, the agent went to Foley's home to purchase one ounce of cocaine for $1,500. The actual amount was later determined to be 23.5 grams. Reportedly at this sale, Foley negotiated for the later sale of two ounces of cocaine to the agent.[1] That amount was taken to be 56.7 grams when considered in determining Foley's Base Offense Level. We shall return to this disputed "negotiation" in our discussion of the law.

Meanwhile, on the date of this last transaction, the Foley residence was being surveilled in order to apprehend Raymond after she left Foley's home. Thus, Raymond and a cohort were later arrested shortly after they drove away from the scene. Foley was also arrested that day in her home.

These facts resulted in a six-count indictment against Foley, Raymond, and another person. After plea agreements with the U.S. Attorney's office, Foley agreed to plead guilty to count two, which charged her with aiding and abetting in the October 27, 1988, sale to the agent in violation of 21 U.S.C. § 841(a) (1988) and 18 U.S.C. § 2 (1988). She entered that plea on May 23, 1989.

Foley's Presentence Report (PSR) suggested a Base Offense Level (BOL) of 18 because she was involved in cocaine transactions amounting to between 100 and 199 grams. U.S.S.G. § 2D1.1 "Drug Quantity Table" (prior to Nov. 1, 1989 Amendments). The amounts Foley was considered responsible for included the actual sales to the undercover agent totalling 82.62 grams and the "negotiated" two ounces (taken as 56.7 grams) from November 19. Hence, it is the allegedly negotiated amount of 56.7 grams that increased Foley's BOL to level 18. Without that amount she would be at level 16 (less than 100 grams). *Id.* Foley's PSR recommended a two-point reduction for her role as a minor participant, yielding a Total Offense Level of 16. U.S.S.G. § 3B1.2. The PSR did not recommend a two-point reduction for acceptance of responsibility. Her criminal history category was I, putting her in a range of 21–27 months of possible imprisonment.

Reiterating many of her objections to her PSR, at the sentencing hearing Foley put on evidence to suggest to the district court that a departure from the Guidelines was warranted in her case due to her affliction with Crohn's disease, her responsibility for her five minor children, and her husband's unstable physical and emotional condition, which make him a poor candidate for single-parenting. Foley sought to be adjudged a minimal participant, rather than a minor one, and thereby receive a four-point reduction from her BOL. She also sought a two-point reduction for acceptance of responsibility.

---

1. The transcript of this portion of the conversation in Foley's home reads as follows:

[Undercover Agent]: I guess that's a safe way to be. So the main thing is next time that when I call you [Foley] make sure ...
Foley: Make sure that you want it ... Yeah.
[Undercover Agent]: that it's gonna be on that day. Well, is there any way I could pick up two [ounces] next time, instead of just one?
Foley: (Inaudible) two.
[Undercover Agent]: You know save me. Could I get them cheaper?
Foley: No. No, it would be the same price. I had to pay extra for this one.
Transcript of Confidential Informant and Kathleen Foley at 4–5.

Ultimately the district court accepted the PSR's recommendations, but did give Foley a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Sentencing Transcript Dated October 16, 1989, at 21. Thus, the district court determined a Total Offense Level of 14, putting Foley in the range of 15–21 months. The actual sentence imposed was 15 months with three years of supervised release and participation in a substance abuse program.

Foley's appeal argues four points for reversal which we take out of order, summarily disposing of three of the points and reversing and remanding on one.

## II. DISCUSSION

■ Foley argues in Point I of her brief that the district court abused its discretion in failing to depart from the Guidelines due to her mitigating family circumstances, particularly the welfare of her children. We note that although the district court's concern for the five minor children was paramount, it declined to depart on that basis. Sentencing Transcript Dated October 16, 1989, at 26. In Point IV of her brief, Foley argues that the district court abused its discretion in failing to depart from the Guidelines for her good faith efforts to assist the government. We need not consider the facts surrounding these Points of Error, because we conclude we are without authority to review the district court's exercise of discretion in both of these matters. *See United States v. Evidente*, 894 F.2d 1000, 1003–05 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990).[2]

■ In Point II of her brief, Foley argues that the district court's conclusion that she was a minor, not a minimal, participant in the cocaine transactions was clearly erroneous. Thus she asserts she re-

ceived only a two-point reduction where she should have received a four-point reduction. We disagree. Foley was involved in three actual sales of cocaine to the undercover agent. She was the direct recipient of the purchase price in two of those instances, though her remuneration was actually only a fraction of the sale price. Her conduct might have been minor, but it was instrumental in both arranging and making sales to the agent, and can hardly be said to be minimal as that word is given meaning by the Guidelines. *See United States v. Williams*, 890 F.2d 102, 104 (8th Cir.1989) (per curiam). We cannot say the district court's finding was clearly erroneous.

In Point III of her brief Foley argues that the district court erred in calculating her BOL by including the 56.7 grams of cocaine "negotiated" on November 19, 1988. Foley suggests that the district court erred as a matter of law in application of the Guidelines or as a matter of fact by determining that the conversation amounted to a negotiation for two ounces of cocaine. We agree with the latter view. Though we discuss the former, we decline to decide the issue.

Foley's assertion is that the district court considered the "negotiated" cocaine as an amount under negotiation under U.S.S.G. § 2D1.4. That section is titled "Attempts and Conspiracies" and delineates what transactions may be considered to determine a defendant's BOL where the defendant was convicted of an attempt or conspiracy. Because she was not convicted of attempt or conspiracy, Foley asserts that § 2D1.4 cannot be used as authority for consideration of the two ounces mentioned by the agent on November 19.

This argument is initially compelling. However, as the government points out, U.S.S.G. § 2D1.1, comment. (n. 11),[3] which

---

**2.** Some suggestion was made by Foley's counsel at oral argument that the district court did not depart from the Guidelines because it did not believe it had the power to do so. We would have the power to review the district court's view in that regard, *Evidente,* 894 F.2d at 1005, if such were the case. However, we have reviewed the sentencing transcript and conclude that the district court, though it may have ex-

pressed doubts about its authority to depart, declined to depart on the merits as a discretionary exercise, not because it believed that it lacked the authority to do so.

**3.** This note is now numbered "12." U.S.S.G. App. C, Amendment 133. In fact, both § 2D1.1 and § 2D1.4 and their comments have undergone several amendments of the versions that

provides that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level[,]" expressly directs the sentencing court to "*see* Application Note 1 of the Commentary to § 2D1.4[,]" where "the offense involved negotiation to traffic in a controlled substance[.]" *Id.* Thus, if a defendant's offense can be said to be one involving "negotiation to traffic in a controlled substance," the sentencing court arguably can use the standards from Note 1 of § 2D1.4 regardless of whether or not the defendant was convicted of an attempt or conspiracy.

We have examined the cases in which the courts of appeals have applied U.S.S.G. § 2D1.4. Each one in this circuit involved a conviction for conspiracy or attempt.[4] In the other circuits the same held true,[5] with the exception of one case from the Fifth Circuit, *United States v. Garcia,* 889 F.2d 1454 (5th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). There the court expressly held that § 2D1.4 could be used via Application note 11 of the Commentary to § 2D1.1 to establish the BOL in a case which involved neither a conviction for conspiracy nor an attempt, because the defendant's distribution conviction was " 'an offense involving negotiation to traffic in a controlled substance' ". *Id.* at 1457.

Thus, while we have no controlling authority in this circuit that § 2D1.4 and its comments must apply in this case, we do have persuasive authority (and the force of a logical reading of all the applicable guidelines and Comments) that it could apply. After all, the Guidelines operate on the premise that sentencing should be done on

the basis of total conduct, charged and uncharged alike. Nevertheless, we do not reach the question.

■ Whether § 2D1.4 standing alone or § 2D1.4, comment. (n. 1) (applied via § 2D1.1 comment. (n. 11)) was the authority by which the district court considered the two ounces (as 56.7 grams) of cocaine, we conclude that the court's finding that Foley negotiated for a sale of that amount of cocaine was clearly erroneous.

The PSR suggested that Foley *offered* to arrange the sale of another two ounces of cocaine to the agent. If that had been the case, we might reach the conclusion that she had begun negotiating for another sale and that amount could be considered to determine her BOL (and we would reach the issue we declined to decide above). But it was not the case that Foley *offered* to arrange another sale at all.

It was the agent who brought up the topic of two ounces of cocaine, and not even in the context of another sale. The dialogue between the two (set out in note 1, *supra*) demonstrates that neither person was contemplating another sale at that time. The agent simply inquired about the cost of two ounces. In fact, he had indicated just moments before that the next sale would be arranged by phone, as the other two sales in November had been arranged ("... next time ... *when I call you* make sure ... that it's gonna be on that day."). Transcript of Confidential Informant and Kathleen Foley at 4 (emphasis added).

We conclude that the facts of this case and the conversation of November 19 do not support the finding that negotiation for another sale took place. Each prior sale

---

were applicable at the time of Foley's sentencing. However, because we decide this case on the facts of the two-ounce "negotiation" and not on the technical operation of these two sections vis-a-vis one another, we will not burden ourselves or the reader with an explication of the textual differences between the original sections and comments and their later amended versions.

4. *See, e.g., United States v. North,* 900 F.2d 131, 133 and n. 5 (8th Cir.1990) (generally, defendant convicted of distribution and conspiring to do same could be held accountable for drugs that

coconspirator attempted to sell to government informant pursuant to § 2D1.4, comment. (n. 1), though North's sentence was reversed on facts of his case).

5. *See, e.g., United States v. Adames,* 901 F.2d 11, 12 (2d Cir.1990) (defendant convicted of attempt to possess with intent to distribute could be sentenced according to amount under negotiation pursuant to § 2D1.4 though amount actually bought was less than amount under negotiation and despite fact that government informant was seller rather than purchaser).

involving Foley was arranged with greater specificity. That conversation simply does not support the charge that Foley had offered to make another sale that could be used to establish her BOL.

We recognize that the amount suggested by the agent was likely within the capacity that Foley could obtain for sale and that the agent need not actually intend to ever buy the amount suggested. Thus, had the two *agreed* to another sale of cocaine, any amount under negotiation for such a sale could be used in calculating the BOL. But these facts show us nothing approaching an agreement or negotiation. The only statement from Foley is that two ounces would go for the same price as two one-ounce buys. The agent might just have easily asked what the price of a kilogram would be in an effort to have such amount later be factored into the BOL.

We have grave concerns that, in a case such as this, where the government conducts an undercover operation and (during the sale after which it knows an arrest will be made) makes a suggestion to the defendant about future sales, an intolerable avenue for abuse will be opened. While a defendant may be sentenced on the basis of uncharged conduct, that conduct must be his own (or where applicable that of a co-conspirator), not the government's conduct. We should not countenance allowing the government to manufacture conduct or negotiation without some evidence of knowing participation by the defendant in that conduct or negotiation.

This record reveals that Foley's response to the agent's question about the cost of two ounces of cocaine did not amount to negotiation for a sale of that amount.

## III. CONCLUSION

For the reasons given, we reverse and remand to the district court for resentencing excluding the two ounces (56.7 grams) of cocaine asked about on November 19, 1988, from the calculation of Foley's BOL, and otherwise consistent with this opinion.