UNITED STATES of America, Appellee,

v.

Jose Hernandez GARRIDO, Appellant.

UNITED STATES of America, Appellee,

v.

Ismael VILLANUEVA–HERNANDEZ, Appellant.

UNITED STATES of America, Appellee,

v.

Jose Guerrero VALENZUELA– VALLES, Appellant.

UNITED STATES of America, Appellee,

v.

Carlos VILLANUEVA–HERNANDEZ, Appellant.

Nos. 92–2925, 92–2975, 92–3016 and 92–3197.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1993.

Decided June 3, 1993.

**810**

Robert Thomas Day, Federal Public Defender, St. Louis, MO, argued for Jose H. Garrido; Henry B. Robertson of St. Louis, MO, argued for Ismael Villanueva–Valles; Kim Roger Luther of St. Louis, MO, argued for Jose Valenzuela–Valles; Kenneth D. Goins of St. Louis, MO, argued for Carlos Villanueva–Hernandez.

Edward J. Rogers, Asst. U.S. Atty., St. Louis, MO, argued for appellee.

Before McMILLIAN, MAGILL, and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

This case involves a conspiracy to distribute marijuana. All four defendants were found guilty after a jury trial, and appeal, raising several claims of error at trial and at sentencing. We affirm the majority of issues. However, we vacate the sentences and remand for resentencing, finding error in the marijuana quantities used to determine the offense levels.

## I. BACKGROUND

Detective Ron Pauley, who worked for the MEG Unit, a narcotics law enforcement team in St. Louis County, Missouri, arranged with defendant Jose Valenzuela–Valles (Valenzuela) to purchase marijuana in January 1992. On January 30, Pauley met with a confidential informant (CI) and Valenzuela to discuss the purchase. On January 31, Valenzuela joined the CI and drove to another location to pick up defendant Jose Garrido (Garrido). The three then went to Garrido's house. En route, Garrido and Valenzuela made two phone calls to defendant Carlos Villanueva–Hernandez (Carlos), and called Carlos again from Garrido's house.

Shortly after the CI, Valenzuela, and Garrido arrived at Garrido's house, Carlos and his brother, defendant Ismael Villanueva–Hernandez (Ismael), arrived. Carlos asked for payment for the marijuana, and was told the money was at Thrifty Inn Motel. Pauley had rented a room at the Thrifty Inn to facilitate conducting this sting operation, and a surveillance team was monitoring the motel. The CI drove to Thrifty Inn, accompanied by Valenzuela and Garrido, and parked in a restaurant parking lot next to the motel. Carlos and Ismael drove together in their car, and also parked in the restaurant parking lot. Carlos, Valenzuela, Garrido, and the CI then entered the motel. Ismael remained in the car, and locked all the doors to the passenger compartment.

The CI called Pauley's room from the lobby, and Garrido stood next to the CI during this call. Garrido left the motel and began pacing around the parking lot of the motel, looking all around and turning his head in all directions. The CI and Valenzuela went up to Pauley's room where Pauley showed them the money, and then left to get the marijuana. While the CI and Valenzuela waited at the motel side entrance, Carlos returned to the car, and Ismael drove it to the side entrance. As Ismael relocked the passenger compartment, Carlos removed a brick of marijuana from the trunk and reentered the motel. The CI and Carlos took the marijuana to Pauley's room, then returned to the car to get the rest of the marijuana. When Carlos came back out of the motel, Ismael opened the trunk with a release located in the glove compartment. Carlos removed a box containing more marijuana from the trunk, and returned to Pauley's room. This transaction involved 31.6 pounds of marijuana. The police then arrested all four defendants. A surveillance team made a videotape from the parking lot before and during the arrests.

Carlos consented to a search of his house. In the house, police discovered two boxes containing forty-three white paper bags filled with 43.05 pounds of marijuana, a .22 caliber rifle,[1] packaging materials, a triple beam scale, and $3500.

All four defendants were charged with: (Count 1) conspiracy to possess and distribute marijuana in violation of 21 U.S.C. § 841(a)(1); and (Count 2) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). The defendants were tried together before a jury.

After trial, the jury returned a verdict of guilty for all four defendants on both counts.

At sentencing, the court found that the conspiracy had 150 pounds of marijuana available for sale, and used that amount to calculate an offense level of 22 for all four defendants. Ismael's and Carlos' (the brothers) offense levels were enhanced by two levels under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon during the commission of the offense. Carlos' offense level was enhanced by an additional four levels under U.S.S.G. § 3B1.1(a) based on the finding that he was a leader in a criminal activity involving five or more participants.[2] Garrido was sentenced to two concurrent terms of fifty-one months; Ismael was sentenced to two concurrent terms of fifty-one months; Valenzuela was sentenced to two concurrent terms of forty-six months; and Carlos was sentenced to two concurrent terms of seventy-eight months.

## II. DISCUSSION

### A. Amount Used to Establish Base Offense Level

All four defendants objected at sentencing to calculating their offense levels based on a finding that the conspiracy participants had 150 pounds of marijuana available to distribute.

The court relied on U.S.S.G. § 2D1.4 to reach the final figure of 150 pounds. This section states that "the offense level shall be the same as if the object of the conspiracy ... had been completed." U.S.S.G. § 2D1.4.[3] When calculating that

---

1. A .38 caliber revolver was found under a mattress in the same room, but evidence of this weapon was not presented to the jury. Evidence of the revolver was before the sentencing court.

2. The court based its finding that there were five or more participants on statements made by Carlos and Ismael that the marijuana was brought up from Texas by two women.

3. The district court incorrectly relied on Application Note 1 to § 2D1.4 to calculate the base offense level. Application Note 1 states "the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable

amount." U.S.S.G. § 2D1.4, comment. (n. 1). The district court stated that although there was no specific negotiation for a sale of 150 pounds, there was some evidence that 150 pounds was available for sale.

This court has required that when using the weight under negotiation to determine the offense level, the government must demonstrate the defendant actually agreed to or negotiated for a sale for the contested amount. *See United States v. Foley*, 906 F.2d 1261, 1265 (8th Cir. 1990). In *Foley*, a government agent had asked about the price of two ounces of cocaine, and the defendant responded that it would be the same price as two one-ounce sales. *Id.* at 1262. Even

the object of the conspiracy involved 150 pounds, the court included the 31.6 pounds seized at Thrifty Inn and the 43.05 pounds seized from Carlos' house. Thus, the 150-pound estimate assumes that the conspiracy involved the marijuana seized at both locations and also involved 75.35 additional pounds of marijuana which was not seized.

 We review factual findings by a sentencing court for clear error. *United States v. Balfany*, 965 F.2d 575, 584 (8th Cir.1992). We reverse if we are left with the definite and firm conviction that the sentencing court erred. *See United States v. Lawrence*, 915 F.2d 402, 406 (8th Cir.1990). We have reviewed the evidence before the district court from which it made the finding that the object of the conspiracy involved 150 pounds, and have found only the following: (1) At trial, Detective Pauley was asked how much marijuana he originally was "looking to buy." He answered "approximately a hundred to 150 pounds." Trial Tr. 2–4. Pauley also testified that when he and Valenzuela discussed the purchase, Valenzuela "stated that he did not have the 150 pounds, he had 30 pounds left for sale." Trial Tr. 2–6; and (2) the presentence report for all four defendants contained a statement indicating the confidential informant had told an agent that 150 pounds were available.

 However, a presentence report is not evidence, *United States v. Wise*, 976 F.2d 393, 404 (8th Cir.1992) (en banc), *cert. denied*, — U.S. —, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993), the confidential informant did not testify at trial that the conspiracy involved 150 pounds, and the government introduced no evidence to support the statement in the presentence report. Pauley's trial testimony does not establish that Valen-

zuela ever had 150 pounds for sale. It merely establishes that Pauley wanted to buy up to that amount. This is insufficient evidence for the court to have found the object of the conspiracy was the sale of 150 pounds. *Compare United State v. Burks*, 934 F.2d 148, 152 (8th Cir.1991) (holding clearly erroneous a finding that the defendant intended to manufacture seven pounds of amphetamine when the government produced no evidence of a lab, equipment, or drugs; government agent never saw drugs or smelled distinctive odor from manufacturing; and defendant's course of conduct did not indicate he owned a lab) *with United States v. Mason*, 982 F.2d 325, 328 (8th Cir.1993) (holding not clearly erroneous a conservative estimate based on number of plastic bags recovered after defendants were seen emptying bags of cocaine during car chase); *United States v. Stephenson*, 924 F.2d 753, 764 (8th Cir.) (approving use of cash seized and testimony of price for which drug routinely is sold to estimate quantity involved in conspiracy), *cert. denied*, — U.S. —, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991).

 Additionally, the government produced evidence which established only that Carlos possessed the marijuana seized from his house. It failed to produce sufficient evidence at trial or at sentencing to establish that the object of the conspiracy included the marijuana seized at Carlos' house. The only reliable evidence produced linking the two quantities of marijuana was the similar packaging. Without more, this is insufficient to establish the object of the conspiracy included the marijuana seized at Carlos' house. Accordingly, the district court's findings that the object of the conspiracy was the sale of 150 pounds of marijuana and that the object

though the amount suggested by the agent was within the capacity the defendant could obtain for sale and the agent did not need to intend actually to buy the amount suggested, the government must show agreement or negotiation for that amount. *Id.* at 1265. Because there was no specific negotiation or agreement in the case before us, the district court incorrectly relied on this application note.

However, Application Note 2 states that when the amount seized of a controlled substance does not correctly reflect the scale of the offense, the district court may estimate the quantity involved.

U.S.S.G. § 2D1.4, comment. (n. 2). This application note is the correct note upon which to rely when the court finds that a greater amount was available for sale than was seized. Therefore, we review the court's finding that 150 pounds were available as an estimate of the quantity involved.

The Sentencing Commission deleted § 2D1.4 in the November 1992 amendments to the Sentencing Guidelines. *See* App'x C ¶ 447. It also amended Application Note 12 to § 2D1.1 by inserting the portions of Application Notes 1 and 2 to § 2D1.4 which are discussed in this case. *See id.*

of the conspiracy included sale of the marijuana seized at Carlos' house were unsupported by the evidence and were clearly erroneous. The record supports only the finding that the object of the conspiracy was the distribution of the amount at Thrifty Inn.

However, the amount of drugs possessed by a coconspirator can be used to establish the offense level of a defendant if the coconspirator's possession was in furtherance of the conspiracy and was reasonably foreseeable. U.S.S.G. § 1B1.3, comment. (n. 1). Although the district court did not mention this guideline section at sentencing, we may affirm on any ground supported by the record. *United States v. Lincoln,* 956 F.2d 1465, 1470 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 259, 121 L.Ed.2d 190 (1992). Therefore, we can affirm use of the marijuana seized from Carlos' house to establish the offense levels for the other three defendants if Carlos' possession was in furtherance of the conspiracy and that possession was reasonably foreseeable.

At Ismael's sentencing, the court stated Ismael had urged that the determination of the amount of marijuana attributable to him should be based only on his conduct and not the conduct of the other members. The court attributed the entire amount of marijuana to Ismael, finding that Ismael lived with Carlos, could have seen what was going on, and was aware of what was happening. Simple knowledge that Carlos possessed marijuana other than the marijuana at Thrifty Inn is not enough to attribute the total amount to Ismael. *See United States v. North,* 900 F.2d 131, 134 (8th Cir.1990). However, the court also considered Ismael's actions, which would include not only his role during the transaction at the Thrifty Inn, but also his statement that he helped Carlos package the marijuana, which was packaged similarly in both locations. We read this as finding that the marijuana seized in both locations was in furtherance of Ismael's agreement with Carlos and was reasonably foreseeable by Ismael. This finding is not

clearly erroneous. *See United States v. Granados,* 962 F.2d 767, 771 (8th Cir.1992) (affirming use of amount of cocaine possessed by coconspirators to determine defendant's offense level because conspirators had signed an agreement to distribute and had a close working relationship). We affirm the use of the amount of marijuana seized in both locations to calculate Ismael's base offense level.

At Valenzuela's and Garrido's sentencing hearings, however, the court did not make findings that allow us to affirm use of the marijuana seized at Carlos' house to determine their offense levels. Upon remand, we direct the sentencing court to determine whether, by a preponderance of the evidence, Carlos' possession of the marijuana in his house was in furtherance of the conspiracy and was reasonably foreseeable to Valenzuela and Garrido. *See United States v. Rogers,* 982 F.2d 1241, 1246 (8th Cir.1993).

### B. Carlos' Pretrial Motions

Carlos argues the trial court erred in denying his pretrial motions as untimely filed. Carlos had timely filed several pretrial motions, including a motion to suppress a statement and to suppress physical evidence seized at his house. After arraignment and prior to the hearing on his pretrial motions, Carlos indicated he wished to cooperate with the government, and the government agreed to talk with him.[4] The government told Carlos that any concession in his prosecution was contingent on Carlos being truthful. As part of the deal, the government also required Carlos to withdraw his pretrial motions with prejudice. A recorded hearing was held at which Carlos withdrew his motions with prejudice, and a transcript was made of the hearing.

Despite the warning that he would not receive any concessions unless he were truthful, Carlos lied several times at debriefing. The government informed Carlos in writing that he would receive no concessions in his

---

**4.** At oral argument, the government advised this court that it was willing to talk to Carlos in order to obtain information regarding separate cocaine and heroine transactions in which he had been involved. In return for Carlos being truthful in

the debriefing, the government would not use for sentencing purposes the amounts of drugs about which Carlos gave information, and would make concessions in prosecuting both Carlos and Ismael on the marijuana charges.

prosecution. Carlos then resubmitted his pretrial motions and also submitted additional motions. The district court denied leave to file all the motions as untimely. *See* Fed. R.Crim.P. 12(f). Carlos filed an interlocutory appeal to this court, and this court issued a temporary stay of the trial. After examining the record and pleadings, this court lifted the temporary stay. *United States v. Villanueva–Hernandez*, No. 92–2165 (8th Cir. May 27, 1992).

█ It is well settled that a defendant may waive constitutional rights as part of a plea bargaining agreement. *Newton v. Rumery*, 480 U.S. 386, 393, 107 S.Ct. 1187, 1192, 94 L.Ed.2d 405 (1987). Courts have upheld the waiver of the statutory right to appeal as part of a plea agreement. *See, e.g., United States v. Melancon*, 972 F.2d 566, 567 (5th Cir.1992). It is only necessary that the waivers be informed and voluntary. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); *Melancon*, 972 F.2d at 567.

In this case, it was after he had waived his pretrial motions that Carlos lied, destroying the possibility of implementing an agreement. However, the failure to implement an agreement was the direct result of Carlos' lying; the failure was not due to any action or fault of the government. The government kept its part of the bargain: it debriefed Carlos and would have made concessions in his prosecution if Carlos had simply been truthful at debriefing.

This court has found valid an agreement in which the government agreed, in part, not to contest an offense level reduction for acceptance of responsibility on the condition that the defendant not obstruct justice before sentencing. *United States v. Rutan*, 956 F.2d 827 (8th Cir.1992). The defendant was charged with attempt to escape before sentencing, and the government did contest the reduction. This court stated the government had reserved the right to object to the reduc-

tion, and thus had not breached its agreement. *Id.* at 830. Here, the government expressly reserved the right to refuse concessions in Carlos' prosecution. We fail to see why Carlos' withdrawal of his motions should be rescinded when Carlos affirmatively acted in a manner that he knew would destroy the possibility of concessions.

Carlos argues, however, that any waiver of his right to file pretrial motions was not informed. He claims his original motions were filed in a timely manner, and he understood the motions to be temporarily "on hold" pending completion of the agreement.[5] This claim is disingenuous. The record of the hearing reveals the court and the government both explicitly stated that Carlos was withdrawing his motions with prejudice, and Carlos agreed. Additionally, Ismael had withdrawn his motions without prejudice at the same hearing. The court and the government clearly contrasted Carlos' withdrawal with prejudice with Ismael's withdrawal without prejudice, stating that only Ismael had the right to raise the motions again if he did go to trial. The following dialogue took place at the hearing:

THE COURT: [Counsel for Carlos] you wish to waive your motions and formally withdraw your motions, and waive hearing on them at this time?

[COUNSEL FOR CARLOS]: Yes we do your Honor.

THE COURT: Alright.

[COUNSEL FOR ISMAEL]: Well your Honor, as to my client, we're not withdrawing our motions but we're waiving the hearing at this time, subject to the deal not going through, raise them at a later date.... [I]n the event that [the government decides] not to cut my client loose, that I can raise the Motion to Suppress at a later time.

THE COURT: ... I'll grant [counsel for Ismael] leave to reraise [the pretrial motions] in front of the District Judge should the time come.... I'm going to say that

---

**5.** Carlos submitted some additional motions when he refiled his original motions. He contends the additional motions were timely filed because the plea agreement was not completed and no new time had been set for additional motions. The additional motions were not filed

within the original time period set for filing motions. The record does not disclose that the charges were dropped after Carlos agreed to be debriefed. Therefore, it was not necessary to set a new time for additional motions. These motions were correctly denied as untimely filed.

you are withdrawing them without prejudice, to re-raise them, and I am granting you leave right now, to re-raise them at the time of trial should that be required....

. . . . .

[THE GOVERNMENT]: And I understand that what the Court's saying here, but I think it's got to be clear that Carlos Villanueva's motions are being withdrawn with prejudice.

THE COURT: Yes. That's my understanding. Is that correct [Counsel for Carlos]?

[COUNSEL FOR CARLOS]: Yes your Honor.

Hearing Tr. 4–6 (Apr. 17, 1992).

The record is unambiguous. Carlos voluntarily and knowingly agreed to withdraw his pretrial motions with prejudice, and the court made it clear that Carlos would not be able to raise the motions again if he did proceed to trial. *Cf. Rutan*, 956 F.2d at 130 (finding waiver of right to appeal knowing and voluntary; court explained defendant would not be able to appeal sentence). We affirm the district court's denial of leave to file Carlos' pretrial motions as untimely. In addition, because Carlos' motion to suppress was untimely filed, the trial court correctly relied on the amount of marijuana seized from his house to establish Carlos' base offense level and correctly enhanced his offense level for possession of the firearms during the offense.

### C. Ismael's Claims

1. *Sentencing Enhancement for Gun*

▆ Ismael contends the trial court erred by adjusting his offense level upward two levels under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon during the commission of the offense. He argues that the guns seized from his brother Carlos' house had no connection to the conspiracy to distribute marijuana at Thrifty Inn, and that Ismael did not possess the guns.

Ismael admitted that he lived in Carlos' house and that he helped Carlos package the marijuana. The rifle was found in the same closet with zip-lock style plastic bags containing marijuana residue and packaging materials. The court's findings that the weapon was used to further the conspiracy and the possession was reasonably foreseeable to Ismael were not clearly erroneous. *See United States v. Turpin*, 920 F.2d 1377, 1386 (8th Cir.1990) (enhancement applies to conspiracy member if another member foreseeably possessed dangerous weapons in furtherance of the conspiracy), *cert. denied*, —— U.S. ——, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991).

2. *Statement to the INS Agent*

At the sentencing phase only, Ismael claims the trial court erred in overruling Ismael's motion to suppress a statement he made to Special Agent Aguilar, an Immigration and Naturalization Services (INS) agent.[6]

After Ismael's arrest, he was discharged at a preliminary hearing because of insufficient evidence. He was then transferred into the exclusive custody of the INS and made the statement in question to Aguilar. The statement provided sufficient information to reinstate the criminal charges.

Ismael moved to suppress the statement, and a hearing was held prior to trial. In his suppression motion, Ismael claimed the statement was not voluntary and he had not been advised of his rights. Both Ismael and Aguilar testified at the suppression hearing. The district court found that Aguilar's testimony was more believable than Ismael's and denied the motion to suppress. It found Ismael's statement was voluntarily made and he had been advised of his rights.

The court also expressed doubt as to whether Ismael was still represented by counsel during the interview with Aguilar because the charges had been dropped at that time. Ismael had commented during the interview that "[his] lawyer" had told him the charges were dropped. The court expressed doubt that Aguilar had a duty to

**6.** Special Agent Aguilar also was involved in the arrest at Thrifty Inn and had been deputized by the DEA to act in this case.

stop the interrogation once he discovered that Ismael was represented at least before the charges were dropped. However, the court did not rule on that issue. Instead, it stated that if counsel briefed the issue, it would consider the issue at a later time. There is no record that counsel approached the court again on this issue.

Ismael's statement was not used at trial, but it was used at sentencing. At the sentencing hearing, Ismael merely noted that the statement had been the subject of a motion to suppress and his position was that the statement had been intended for use in the immigration case against him, not the criminal case.

On appeal, Ismael claims the statement was made in violation of his Fifth and Sixth Amendment rights to counsel and was involuntary and unreliable. He contends involuntary statements and statements which are taken in violation of the Fifth or Sixth Amendment rights to counsel cannot be used in sentencing. However, the district court decided only the issue of voluntariness. The court expressly did not rule on the other issues, and the record does not show that Ismael asked for a ruling. Accordingly, Ismael has waived the Fifth and Sixth Amendment right to counsel claims. We do not address these claims because he has made no showing of plain error resulting in manifest injustice. *See United States v. Flores*, 959 F.2d 83, 88 (8th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992). Instead, we review only the district court's finding at the suppression hearing that the statement was voluntary.

We review this determination for clear error. *United States v. Williams*, 917 F.2d 1088, 1090 (8th Cir.1990). The test for determining the voluntariness of a statement is "whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir.1989). The two factors to consider when considering whether the suspect's will is "overborne" are "the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." *Id.*

After viewing the totality of the circumstances, we agree that Ismael's statement was voluntary. Aguilar testified that he informed Ismael of his rights before he made the statement, and that he took care to make sure Ismael understood his rights. Ismael does not speak or read English, but Aguilar is fluent in Spanish, conducted the interview in Spanish, and verbally translated all English documents for Ismael. Although no other persons were present in the room with Aguilar and Ismael, Aguilar testified he left the door to the room open and other persons were in the surrounding area. The interview was three hours long, but Ismael was provided lunch. Ismael did testify that Aguilar coerced him into making the statement. However, the district court was not clearly erroneous in discrediting Ismael's testimony. Aguilar's conduct was not that which would cause a suspect's will to be overborne. We also cannot say that Ismael had so little capacity to resist pressure to confess that taking his statement amounted to a constitutional violation. We affirm the district court's finding that the statement was voluntary, and the statement was properly used in sentencing.

### 3. *Admission of Physical Evidence*

Ismael argues the district court erred when it admitted evidence of the drugs, paraphernalia, and the rifle seized from Carlos' house and when it refused to give a limiting instruction that the jury should consider that evidence only against Carlos. He argues the evidence was irrelevant to the government's case against him and was unfairly prejudicial.

Whether evidence is relevant and admissible is within the sound discretion of the district court. *United States v. Davis*, 882 F.2d 1334, 1343 (8th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990). We review the district court's rulings concerning relevance and prejudice for abuse of discretion. *United States v. Harris*, 956 F.2d 177, 180 (8th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 85, 121 L.Ed.2d 48 (1992).

Because the district court's discretion to determine what evidence is relevant is particularly broad in the context of a conspiracy trial, *Davis*, 882 F.2d at 1343, we cannot say the court abused its discretion in this case.

The evidence unquestionably was probative of the case against Carlos, and was relevant in the joint trial on this ground alone. *Cf. United States v. Watts*, 950 F.2d 508, 513 (8th Cir.1991) (holding admissible evidence that one conspiracy member participated in drug activities with persons other than codefendants), *cert. denied,* — U.S. ——, 112 S.Ct. 1276, 117 L.Ed.2d 502 (1992). Additionally, the marijuana seized at Thrifty Inn and at the house was packaged in the same type of white bags which also were seized at the house. Thus, the physical evidence seized at the house also was probative of the source of the marijuana seized at Thrifty Inn.

Ismael argues that even if the evidence was admissible for some purposes, the court erred by refusing to instruct the jury to exclude that evidence from consideration against Ismael. However, before the jury deliberated, the court did instruct it to consider the evidence separately for each offense and each defendant, and not consider against one defendant any evidence which was admitted against another defendant. Ismael argued to the jury in closing that it should not consider the evidence seized from the house against him. These instructions given the jury adequately covered the substance of the instruction Ismael requested, and were sufficient to protect Ismael from any unfair prejudice. *See United States v. Wedelstedt*, 589 F.2d 339, 348–49 (8th Cir.1978), *cert. denied,* 442 U.S. 916, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979); *see also Watts*, 950 F.2d at 513 (holding evidence of preconspiracy drug activities involving one conspiracy member not prejudicial to other defendants; jury could compartmentalize information and preconspiracy evidence did not implicate other defendants except to convince the jury that first member was a drug dealer).

#### D. Other Claims

The defendants also raise the following claims: (1) Carlos claims the district court erred in refusing to grant him a two level downward adjustment for acceptance of responsibility and in enhancing his offense level under U.S.S.G. § 3B1.1(a); (2) Garrido and Ismael both claim the government failed to produce sufficient evidence of guilt on either count to support their convictions; and (3) Ismael contends the district court erred by allowing the jury to view the surveillance videotape during its deliberations when Ismael was not present. These claims are meritless and we affirm without further discussion.

### III. CONCLUSION

We find error only in the calculation of the amount used to determine the defendants' offense levels. We vacate the sentences of all four defendants, and remand for resentencing. Upon resentencing, the district court should calculate the base offense level for Carlos and Ismael using the amounts of marijuana seized at Thrifty Inn and at Carlos' house. When calculating Valenzuela's and Garrido's offense levels, the court should (1) use the amount seized at Thrifty Inn, and (2) make the necessary findings to determine whether the amount seized at Carlos' house was in furtherance of the conspiracy and foreseeable to those defendants. We affirm on all other issues.