UNITED STATES of America, Appellee,

v.

Jose Hernandez GARRIDO, Appellant.

UNITED STATES of America, Appellee,

v.

Ismael VILLANUEVA–HERNANDEZ, Appellant.

UNITED STATES of America, Appellee,

v.

Jose Guerrero VALENZUELA–VALLES, Appellant.

Nos. 94–1729, 94–1735 and 94–1836.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1994.

Decided Oct. 24, 1994.

R. Thomas Day, St. Louis, MO, argued, for Garrido.

Rodolfo Rivera, St. Louis, MO, argued, for Villanueva–Hernandez.

Kim R. Luther, St. Louis, MO, argued, for Valenzuela–Valles.

Edward J. Rogers, Asst. U.S. Atty., for appellee.

Before MAGILL, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

MAGILL, Circuit Judge.

Jose Hernandez Garrido (Garrido) and Jose Guerrero Valenzuela–Valles (Valles) appeal the district court's inclusion of 43.05 pounds of marijuana found at the home of a co-defendant in its determination of the Sentencing Guidelines base offense level. Ismael Villanueva–Hernandez (Ismael) appeals the district court's imposition of the maximum sentence within the applicable guidelines range. Finding no clear error in the calculations done by the district court,[1] we affirm the sentences of Garrido and Valles. Because Ismael's appeal is from a sentence within the applicable guidelines range, we dismiss for lack of jurisdiction over the appeal.

## I. BACKGROUND

This is the second appeal resulting from an ill-fated attempted sale of marijuana. The facts surrounding the attempted sale are set forth in our opinion in *United States v. Garrido*, 995 F.2d 808, 810–11 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 331, 126 L.Ed.2d 276 (1993) (*Garrido I*), but will be briefly summarized here. In November 1991, Detective Ron Pauley of the MEG Unit, a narcotics law enforcement unit in St. Louis County, Missouri, was introduced to Valles by Julio Gallardo, a police informant. On January 28, 1992, Valles informed Gallardo that he had a "Mexican source" who had recently acquired 150 pounds of marijuana that were being offered for sale. Gallardo relayed this information to Detective Pauley and to U.S. Immigration Service Agent Aguilar, and several conversations between Gallardo and Valles, Pauley and Aguilar ensued.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

On January 30, at a meeting to negotiate the price, Valles informed Detective Pauley that only 30 of the original 150 pounds remained.[2]

On January 31, Gallardo met with the police officers assigned to the investigation and a surveillance plan was established. Gallardo then left and met Valles. The pair drove to another location and met Garrido. The trio then drove to Garrido's house. On the way to Garrido's house, the group made two calls to Carlos Villanueva–Hernandez (Carlos), the "Mexican source." The trio waited a short while at Garrido's house until Carlos and his brother Ismael arrived. Upon arriving, Carlos asked for the money, but Valles replied that the money was at the Thrifty Inn. (Detective Pauley had rented a room at the Thrifty Inn for use in the undercover operation, and a surveillance team was monitoring the motel.)

Garrido, Valles and Gallardo then drove to the motel. The Villanueva–Hernandez brothers (Carlos and Ismael) drove separately. Once at the motel, Ismael remained with the car to guard the marijuana in the trunk of the car. Garrido, Valles, Carlos and Gallardo entered the motel lobby and contacted Detective Pauley. After contacting Pauley, Garrido began patrolling the parking lot. Carlos made two trips to the car to retrieve the marijuana, and after all the marijuana was delivered to Pauley's room, the police arrested Carlos, Ismael, Garrido and Valles. After the arrest, Carlos consented to a search of a house at 8125 Toddy in St. John, Missouri, in which he and Ismael resided. During this search, 43.05 pounds of marijuana were found in packaging materials identical to those used to package the 30 pounds seized at the motel. Other evidence of drug trafficking, including $3500 in cash, two guns, various repackaging materials, and an Ohaus triple beam scale, was seized.

After a joint jury trial, Garrido, Valles, Ismael and Carlos were each convicted of one count of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841. The defendants were each sentenced to two concurrent terms of 51, 46, 51 and 78 months, respectively (base offense level 22).[3] These sentences resulted from base offense level calculations that included the entire 150 pounds of marijuana originally discussed by Detective Pauley and Valles. All four defendants appealed their convictions and sentences. This court affirmed the convictions, but remanded for resentencing. *Garrido I*, 995 F.2d at 817. We instructed the district court to calculate Carlos's and Ismael's offense levels using the amounts of marijuana seized at the Thrifty Inn and at Carlos's house. We also instructed the district court to calculate Garrido's and Valles's offense levels using the amount seized at the Thrifty Inn and the amount seized at Carlos's house, but only if the amount seized from Carlos's house was in furtherance of the conspiracy and was reasonably foreseeable to Garrido and Valles. Because the record on appeal was insufficient to allow us to determine whether these conditions were satisfied, we remanded for the necessary findings. *Id.*

Upon remand, the district court carefully conducted a resentencing hearing at which it determined the offense levels of all four defendants using the amounts seized from the Thrifty Inn and from Carlos's house. Garrido was sentenced to two concurrent terms of 41 months based upon an offense level of 18 and a criminal history category of III (range of 33–41 months). Valles was sentenced to terms of 33 months based upon an offense level of 18 and a criminal history category of

---

**2.** The record is ambiguous as to when Detective Pauley learned that only 30 pounds were to be sold. Gallardo's testimony indicates that the purpose of the meeting between Pauley and Valles on January 30 was to discuss the price on 30 pounds. Trial Tr. 1–69. Gallardo and Valles had a conversation on January 29 in which the amount was set at 30 pounds. This information was passed on to Agent Aguilar. Resentencing Tr. (Valles) 7. There is no mention as to whether Detective Pauley was informed of the change. Pauley first mentions the 30–pound amount in

the context of the January 30 meeting at the Thrifty Inn. Trial Tr. 2–5, 2–6. On this record we may safely conclude that Pauley learned that the sale involved only 30 pounds on either January 29 or 30.

**3.** Both the original sentences of the defendants and those imposed after remand include an additional term of supervised release and a special assessment.

I (range of 27–33 months). Ismael was sentenced to terms of 41 months based upon an offense level of 20 and a criminal history category of I (range of 33–41 months). Carlos does not appeal his new sentence.

## II. DISCUSSION

### A. Amount Used to Establish Base Offense Level

#### 1. Garrido's Claims

Garrido argues on appeal that the district court erred because it included the 43.05 pounds of marijuana seized at Carlos's house in setting his base offense level at 18, and that the district court should have excluded the 43.05 pounds from the calculation, resulting in an offense level of 16. Garrido argues that the 43.05 pounds should have been excluded because (1) they were not in furtherance of the conspiracy (i.e., the jointly undertaken criminal activity), and (2) they were not reasonably foreseeable to Garrido.

■ We apply a "clearly erroneous" standard when reviewing these factual findings by the sentencing court. *United States v. Balfany*, 965 F.2d 575, 584 (8th Cir.1992). We will not disturb a factual finding unless after reviewing the entire record we are "left with the definite and firm conviction that a mistake has been committed." *Sims v. United States Dep't of Agric. Food & Nutrition Serv.*, 860 F.2d 858 (8th Cir.1988) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), and *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

We have reviewed the evidence presented to the district court from the transcripts of the trial, sentencing and resentencing hearings, which consists of the following: Agent

Aguilar testified [4] that on either January 17 or 21, while Ismael and Carlos were in Carlos's house, "Jose" [5] called and spoke to Carlos. Immediately after this telephone conversation, Carlos "got some marijuana from the house and left." He returned about an hour later without the marijuana. Resentencing Tr. (Garrido) 6. Aguilar testified that a similar phone call made on January 31 culminated in the attempted sale at the Thrifty Inn. *Id.* at 8–9; *see also* Trial Tr. 1–76. In addition, the evidence at trial proved that the initial meeting point for the conspirators was Garrido's house.[6] Resentencing Tr. (Garrido) 15; Trial Tr. 1–78.

■ This evidence establishes that the 43.05 pounds of marijuana were held by Carlos in furtherance of a jointly undertaken and ongoing conspiracy to distribute marijuana. *See* U.S.S.G. § 1B1.3, comment. (n. 2) (Nov. 1993). Agent Aguilar's testimony supports a reasonable inference that on or about January 17, Carlos made a delivery of marijuana at Garrido's request. *See* Resentencing Tr. (Garrido) 6–7. The January 17 and 31 transactions were in furtherance of jointly undertaken criminal activity the goals of which are broad enough to encompass not only the 30 pounds seized at the Thrifty Inn, but also the 43.05 pounds found at Carlos's house. Thus, Garrido is not involved in a single instance of joint activity, but has jointly undertaken a broader activity in joining the conspiracy. *See* U.S.S.G. § 1B1.3, comment. (n. 2) (Nov. 1993) (illustrations 5 & 7 as examples of single instances of joint activity). Moreover, additional evidence indicates an ongoing relationship between Carlos and Garrido. Carlos knew where Garrido lived, and felt comfortable "doing business" there. This familiarity contrasts with the caution evidenced by the conspirators at the Thrifty Inn. Indeed, the conspirators relied upon one another as look-

---

**4.** This testimony was based upon Agent Aguilar's interview of Carlos's brother Ismael shortly after the arrests at the Thrifty Inn.

**5.** Although the caller identified himself only as "Jose," Resentencing Tr. (Garrido) 6, 11, Ismael concluded that the caller was Cuban after speaking with him briefly on the telephone. *Id.* at 10–11. Aguilar testified that Garrido was the only Cuban named Jose that was arrested in connection with the conspiracy and that the context of

Aguilar's conversation with Ismael made it clear that Ismael referred to Garrido. *Id.* at 12–13.

**6.** Viewed in a light most favorable to the government, Gallardo's trial testimony supports an inference that Garrido's home was originally intended as the place for the transaction to occur, and that the motel was chosen only after Carlos learned that the money was at the motel. *See* Trial Tr. 1–74, 1–80.

outs while at the Thrifty Inn. Upon our review of this evidence, "we are not left with the definite and firm conviction that a mistake has been committed" by the district court in finding that the 43.05 pounds of marijuana seized at Carlos's house was in furtherance of the jointly undertaken conspiracy to distribute marijuana. *Sims*, 860 F.2d at 863 (internal quotation and citation omitted). Therefore, we hold that the district court's finding that the 43.05 pounds held by Carlos was in furtherance of the conspiracy is not clearly erroneous.

Similarly, the evidence establishes that Carlos's possession of the 43.05 pounds was reasonably foreseeable to Garrido. Garrido was aware of the ongoing conspiracy, and committed overt acts in furtherance of the conspiracy on at least two separate occasions. Garrido called Carlos on both January 17 and January 31 with the expectation that Carlos would be able to make a delivery of marijuana out of his "inventory." These telephone requests for deliveries support a reasonable inference that Garrido expected Carlos to have a sufficient inventory of marijuana to satisfy such requests. In light of these demonstrated expectations, we cannot say that the district court's finding that it was reasonably foreseeable to Garrido that Carlos would be in possession of 43.05 pounds of marijuana is clearly erroneous.

## 2. Valles's Claims

Valles makes the same arguments on appeal as does Garrido. Valles's arguments do not warrant extended discussion.

As discussed above, the evidence establishes that the 43.05 pounds of marijuana

were held by Carlos in furtherance of a jointly undertaken conspiracy to distribute marijuana. Although only 30 pounds were actually produced, Valles initially offered the entire 150 pounds for sale. Carlos's possession of 43.05 pounds which were virtually identical to the 30 pounds seized at the motel gives rise to the reasonable inference that these 43.05 pounds were part of the same shipment that Valles had already attempted to sell to Pauley. Moreover, the communication between Valles and Carlos was constant and continuing. Valles was apprised of the current status of Carlos's inventory. Valles negotiated the price with Carlos and brought Carlos and Pauley together. This evidence supports a reasonable inference that Valles was actively assisting Carlos in the distribution of the 150 pounds of marijuana that Carlos had received earlier in the month. In light of the conflicting physical evidence seized from Carlos's house, the district court chose to discredit Valles's statement that only 30 pounds remained,[7] and that court had the opportunity to judge the credibility of the witnesses, to which we must give "due regard." *See* 18 U.S.C. § 3742(e). In light of this evidence, we are not convinced that the district court's finding that the 43.05 pounds held by Carlos was in furtherance of the conspiracy is clearly erroneous.

The evidence also establishes that Carlos's possession of the 43.05 pounds was reasonably foreseeable to Valles. Valles's discussions with Pauley indicate that he was aware of the volume of the shipments and sales with which Carlos was involved. Valles was aware that Carlos disposed of at least 120 pounds of marijuana in January. On January 28, Valles stated to Gallardo that his

---

[7]. The court need not discredit Valles's statement in order to include the 43.05 pounds. Valles made this statement to Gallardo on January 29. Crediting Valles's statement merely establishes that Valles believed Carlos had only 30 pounds *offered for sale* to Detective Pauley as of January 29. Crediting this statement does not prove that Valles believed that Carlos *possessed* only 30 pounds on January 29. Moreover, even if Valles's statement is taken as establishing that Valles believed Carlos possessed only 30 pounds on January 29, the evidence indicates that it was foreseeable to Valles that Carlos might acquire additional marijuana during the intervening two days, given Valles's notice of the fact that Carlos

had sold 120 pounds during the last two weeks in January. Thus, even if Valles's statement is credited, it does not establish that Carlos's possession of the 43.05 pounds was not reasonably foreseeable to Valles.

Garrido apparently learned of the amount of the sale on or about January 31, as the transaction was being orchestrated. Thus, Carlos's possession of additional marijuana would be at least as foreseeable to Garrido. Garrido's knowledge of the fact that only 30 pounds were actually being sold does not have any bearing on the reasonability of Garrido's beliefs about the amount of marijuana in Carlos's inventory.

"Mexican source" currently had 150 pounds of marijuana available. Resentencing Tr. (Valles) 7. During the next three days, Valles told Gallardo and Detective Pauley that all but 30 pounds had already been sold. Because Valles knew the volume of Carlos's drug trafficking, "we are not left with the definite and firm conviction that a mistake has been committed" by the district court in finding that the presence of 43.05 pounds of marijuana at Carlos's house was reasonably foreseeable to Valles. *Sims*, 860 F.2d at 863 (internal quotation and citation omitted). Thus, we hold that the district court's finding that it was reasonably foreseeable to Valles that Carlos would be in possession of 43.05 pounds of marijuana is not clearly erroneous.

### B. Imposition of Maximum Sentence within Guidelines Range

■ Ismael appeals only the imposition of the maximum sentence within the applicable guidelines range. He does not, and indeed cannot, contend that the sentence imposed upon him was outside the applicable guidelines range. *See Garrido I,* 995 F.2d at 817 (instructing district court to sentence Ismael based on the amounts seized from the Thrifty Inn and Carlos's house). Although Ismael argues that the trial court abused its discretion by stating insufficient reasons for imposing the maximum sentence within the guidelines range, a district court need not state any reasons where, as here, the applicable range is less than twenty-four months. *United States v. Woodrum,* 959 F.2d 100, 101 (8th Cir.1992) (per curiam); *see also* 18 U.S.C. § 3553(c)(1) (1988). Thus, the sentence is not a result of incorrect application of the guidelines. Because none of the required jurisdictional bases are satisfied, this court lacks jurisdiction to review Ismael's sentence. *United States v. Mihm,* 13 F.3d 1200, 1205 (8th Cir.1994); *Woodrum,* 959 F.2d at 101; *see also* 18 U.S.C. § 3742(a) (1988). Accordingly, we dismiss Ismael's appeal for lack of jurisdiction.

### III. CONCLUSION

We find no error in the district court's determination that the 43.05 pounds of marijuana seized at Carlos's house was held by Carlos in furtherance of the jointly undertaken conspiracy. Nor do we find any error with respect to that court's conclusion that Carlos's possession of this marijuana was reasonably foreseeable to Garrido and Valles. We therefore find no clear error in the district court's use of the 43.05 pounds of marijuana seized at Carlos's house in computing the base offense level for Garrido and Valles. Accordingly, we affirm the sentences of Garrido and Valles. We dismiss Ismael's appeal for lack of jurisdiction.

BRIGHT, Senior Circuit Judge, dissenting.

I dissent on the sentences imposed on Garrido and Valenzuela–Valles because of the absence of sufficient evidence to support a finding that the 43.05 pounds of marijuana was in furtherance of the conspiracy and was reasonably foreseeable to the offense of conviction, i.e., the conspiracy which resulted in delivery of thirty pounds of marijuana to the police.

No evidence exists that these defendants ever touched, packaged, viewed, spoke about or made any kind of an agreement (which is the essence of any conspiracy) relating to the 43.05 pounds of marijuana.

The finding of a conspiratorial relationship between these two defendants and the conspiracy rests on mere surmise and conjecture. At best, the majority alludes to a scintilla of evidence. Such scant evidence cannot and should not support the finding required to increase the prison time of these offenders.